**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

EDELMIRO FIGUEROA, JR., # 282126,

        Petitioner,

v.                                      Case No. 09-cv-14600
                                            Honorable Nancy G. Edmunds

CARMEN D. PALMER,

        Respondent,

_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS,**
**(2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) DENYING**
**AN APPLICATION FOR LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS***

**I. INTRODUCTION**

       This is a habeas case filed under 28 U.S.C. § 2254. Petitioner Edelmiro Figueroa, currently incarcerated at the Chippewa Correctional Facility in Kincheloe, Michigan,[1] filed this *pro se* Habeas Petition challenging his conviction for first-degree criminal sexual conduct (CSC), MICH. COMP. LAWS § 750.520b(1)(a), imposed by a Oakland County, Michigan, Circuit Court jury. The Complainant in the case was Figueroa's three-year-old daughter.

---

       [1]Figueroa was incarcerated at the Michigan Reformatory in Ionia, Michigan, when he originally filed his Habeas Petition; however, he has since been transferred to the Chippewa Correctional Facility. The proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated petitioner is the warden of the facility where the petitioner is incarcerated. Rule 2(a) of the Rule Governing § 2254 Cases; see also *Edwards v. Johns*, 450 F.Supp.2d 755, 757 (E.D. Mich. 2006). In most cases where a petitioner is transferred to a different facility after the petition has been filed, the Court would order an amendment of the case caption. However, because the Court is denying the Habeas Petition in this case, it finds no reason to do so.

Following his conviction, on October 23, 2007, Figueroa was sentenced, as a habitual offender, second offense, to twenty-five to fifty years in prison. In his *pro se* pleadings, he alleges: (1) his Confrontation Clause rights were violated when the trial court admitted his daughter's statements that were made to the nurse who examined her in the emergency room, and (2) trial counsel was ineffective for failing to object to the admission of those statements.

For the reasons stated below, the Court will deny the Petition. The Court also will decline to issue Figueroa a Certificate of Appealability and will deny him an Application for Leave to Proceed on Appeal *In Forma Pauperis*.

## II. BACKGROUND

Figueroa's trial began on October 2, 2007 and concluded on October 5, 2007. Pontiac Police Officer Che McNeary was the first witness to testify for the prosecution.

Officer McNealy testified that, on May 26, 2007, he was dispatched to 28 Harriett Street in the City of Pontiac, Michigan, to investigate a criminal-sexual-conduct complaint. When he arrived, he saw several people arguing in the street. He was approached by Esmerelda Cabrera, the mother of the three-year-old victim. After speaking with Cabrera, he asked to see the girl. Because of the victim's age, Officer McNeary did not attempt to interview her. Rather, he took her and her mother to a nearby hospital.

Officer McNeary testified that Cabrera told him that Figueroa had fled from the house where the incident occurred. Officer McNeary was given a photograph of Figueroa so he could identify him.

2

Cabrera testified next.  She said she had three children, two daughters, J.S.[2] and J.C., who were aged three and one respectively at the time of the incident, and one son, Alex.[3]  She testified that, for eight years, Figueroa had been her on-again-off-again boyfriend.  He was her daughters' biological father.

In May 2007, Cabrera testified that she, her children, Figueroa, and Figueroa's mother, Iris Alicea, were all living together at 32 Rose Court in Pontiac, Michigan.  She said that, on the night of the incident, May 26, 2007, around 4:00 a.m., Figueroa came home drunk.  His mother was with him.  Cabrera said she and Figueroa had some words.  She then left the house because she did not want to argue with him.  She said the children were sleeping at the time.  Cabrera said she went to her friend's house across the street.

Cabrera further testified that, around 5:00 a.m. that morning, Alex came to her friend's house, holding J.S.'s hand and carrying J.C.  She said he was pale.  He told her, "I'm not bringing my sisters back to that house."  Trial Tr. vol. I, 125, Oct. 2, 2007.  He said he saw Figueroa trying to rape J.S.  He said Figueroa had his pants down and his private part was "up."  Trial Tr. vol. I, 127, Oct. 2, 2007.  Alex also said that his sister's pants and panties were down.  He said when Figueroa saw him, he pulled J.S.'s pants back up.

Cabrera said J.S. was scared and that her pants and panties were on backwards. There was blood in her panties and there was redness and a scratch on her private parts. The scratch was between her vagina and clitoris.  Cabrera said she had given J.S. a bath earlier that day, and there was no redness or scratch in her vaginal area.

---

[2]Because of their ages, the initials of the daughters will be used in order to protect their identities.

[3]Cabrera's son, Alex, is named because he testified in the case.

3

Cabrera testified that she then went back to the house and tried to wake Figueroa. She said she punched him three times. He was sleeping with his boxer shorts rolled up with his pants, which she said was unusual. She also woke Alicea and told her what happened.

Cabrera said she then went outside. Figueroa followed; he was trying to fight with her. She said they were all arguing in the street, she, Figueroa, his mother, and her friends. Figueroa then ran back into the house, grabbed his dog, and ran out the back door. She said he ran when he was made aware that the police had been called. Cabrera said after the police arrived, they took her and J.S. to the emergency room.

Cabrera's son, Alex, testified next. He testified that, in May of 2007, he lived in a house on Rose Court in Pontiac, Michigan, with his mother, his sisters, Figueroa, whom he called "Junito" and Figueroa's mother. He said he was in bed with his sisters on the night in question, when he heard J.S. crying. He told her to be quiet and then saw Figueroa in the blanket with her. J.S.'s pants were off, and Figueroa didn't have any clothes on either. His sister was lying on her back and Figueroa was lying sideways next to her. He said he saw the blanket moving and Figueroa putting his "wee wee" into where his sister takes a "pee." Trial Tr. vol. II, 167, Oct. 4, 2007. Alex said he was too scared to do anything, but said he was going to his own room if she didn't stop crying. Afterward, he said Figueroa left the bed and went downstairs.

Alex further testified that he then took J.S., and J.C., across the street to his mother. He told his mother what happened. He said his mother went back to the house and started fighting with Figueroa. The police were then called. Figueroa ran away. He said he did not have any problems with Figueroa.

4

On cross-examination, Alex repeated that he saw Figueroa's private part in his little sister's private part and she was crying.

Lori Lockwood, an emergency-room nurse at Pontiac Osteopathic Hospital, testified next. She said that, on May 26, 2007, she saw J.S. in the emergency room. Lockwood said J.S. was not very verbal. She said she asked J.S. if "papi" had touched her and where he had touched her. Trial Tr. vol. II, 184, Oct. 4, 2007. J.S. said yes, pointed to her vaginal area, and said it hurt. Lockwood said there was blood in the crotch of her panties.

Lockwood further testified that she and Dr. Tressa Gardner performed the examination. J.S. had an area of excoriation, or redness, on her right labia. Lockwood said J.S. was too young for an internal examination. She said she gave J.S.'s panties to a police officer.

Dr. Gardner testified that she observed a rash or tissue breakdown in J.S.'s genital area. Her hymen was intact. The fact that the hymen was intact did not mean that a sexual assault had not occurred. Dr. Gardner testified that there could be penetration of the vaginal lips without there being significant trauma to that area.

Detective Santiago Serna, a police officer employed by the Pontiac Police Department, testified that he was assigned to the case as the investigating officer. He said he arranged for J.S.'s and Alex's interviews but did not conduct the interviews himself. He said that, on June 4, 2007, he witnessed their separate interviews through a one-way mirror. He said he subsequently spoke with Figueroa and his mother.

Following Detective Serna's testimony, the People rested.

The defense called Figueroa's mother, Alicea, as a witness. Alicea testified that she was living in a house on Rose Court with Figueroa, Cabrera, and the children in May 2007.

5

She said that, on May 26, 2007, she left the house around 12:30 a.m. and returned around 2:00 a.m.  She said she had been at a friend's house and had not been drinking.

When Alicea got home, she said she checked on the children and then went downstairs and smoked a cigarette.  She said she waited until her son came home, around 10:30 a.m., and then they both went to sleep on the couch.  Alicea further testified that, later, Cabrera woke them up, accused them of hurting J.S., and told them to get out of the house.

Alicea also testified that she had gone to sleep around 3:30 a.m.  She said she heard J.S. crying and telling her brother to leave her alone.  Alicea testified that her son wasn't in the house between the hours of 2:00 a.m. and 10:00 a.m.  She also testified that she never called Shauna Lochridge, her son's best friend, on that date, to pick him up at his cousin's house.

Alicea testified that the detective never asked her to make a written statement.  She also testified that Figueroa was not drunk when he came home that night.  She said the police never came to the house.

Following Alicea's testimony, the defense rested.

Shauna Lochridge testified as a rebuttal witness.  She testified that, on May 26, 2007, at about 10:00 a.m., Figueroa's mother telephoned her and asked her to pick up Figueroa at his cousin's house.  She said she picked him up around 10:30 a.m. and took him back to her house, where he stayed for a couple of days.

Detective Serna also testified as a rebuttal witness.  He said when he talked to Alicea on June 5, 2007, she told him that her son had returned home at 10:00 p.m. on the night in question.  He said he asked Alicea to prepare a written statement but she refused.

6

He said he also interviewed Figueroa, who told him that he had been out drinking that night and returned home around 5:00 a.m. and found the children alone. Figueroa also told him that he was confronted by Cabrera.

On October 5, 2007, the jury found Figueroa guilty.

Following his sentencing, Figueroa filed a claim of appeal with the Michigan Court of Appeals, raising the same claim raised in this Habeas Petition. On March 12, 2009, the Court of Appeals affirmed his conviction and sentence. *People v. Figueroa*, No. 282020, 2009 WL 637308 (Mich.Ct.App. Mar. 12, 2009). Figueroa thereafter filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Figueroa*, 484 Mich. 872, 769 N.W.2d 692 (2009).

Figueroa neither filed a post-conviction motion with the state trial court nor a writ of certiorari with the United States Supreme Court. On November 24, 2009, he filed this Habeas Petition.

### III. DISCUSSION

### A. Standard of Review

Figueroa's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, ---U.S. ----, ----, 130 S.Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) ( per curiam )). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, --- U.S. ----, ----, 131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not

8

mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, --- U.S. ---, --- S.Ct. ---, 2011 WL 1225705, at *8 (2011) (holding that "[t]his is a difficult to meet and 'highly deferential standard for evaluating state-court rulings") (citing *Harrington*, --- U.S. ---, 131 S.Ct at 786 and *Woodford*, 537 U.S. at 24) (internal quotation marks omitted).

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, --- U.S. ---, 131 S.Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)).

Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S.Ct. at 786-87.

## B.  No Confrontation Clause Violation

9

Figueroa asserts that he is entitled to habeas relief because the trial court violated his Confrontation Clause rights by admitting J.S.'s statements made to the nurse who examined her in the emergency room.  Respondent argues that the claim is barred by procedural default because Figueroa failed to object at trial.  Figueroa argues that his attorney was ineffective for failing to object to the admissibility of the statements and thus has established cause for his default.

Federal-habeas relief may be precluded on a claim that a petitioner has not presented to the state courts in accordance with the state's procedural rules.  *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991).  The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent."  *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005) (same); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001) (same).  "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar."  *Harris v. Reed*, 489 U.S. 255, 263-64 (1989).  The last explained state court judgment should be used to make this determination.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

The Michigan Court of Appeals rendered the last reasoned opinion on this claim. In dismissing the claim, the Court of Appeals relied upon Figueroa's failure to object at trial,

10

stating:

> Defendant argues that the trial court violated his right to cross-examine the witnesses against him when it permitted a nurse to testify about the statements that his three-year-old daughter, the complainant in this case, made at the hospital after she was allegedly sexually assaulted. Defendant contends that, because a police officer directed the complainant's mother to take her to the hospital and the nurse examined the complainant for the primary purpose of investigating the alleged assault, these statements were testimonial and should have been barred. Defendant further contends that this error deprived him of a fair trial. Because the admissibility of the nurse's testimony was never challenged before the trial court, we review this unpreserved constitutional issue for plain error that affected defendant's substantial rights.

*Figueroa*, 2009 WL 637308, at *1 (citation omitted).

In Michigan, the failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors.  *See People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits.  *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989).  Plain-error review does not constitute a waiver of state procedural default rules.  *See Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).  Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative.  *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991).

In this case, the Court of Appeals denied Figueroa's claim based upon a procedural default–the failure to object at trial.

11

A state prisoner who fails to comply with a state's procedural rules waives the right to federal-habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner must present a substantial reason to excuse the default. *See Amadeo v. Zant*, 486 U.S. 214, 223 (1988). Such reasons include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. *See McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991).

Here, Figueroa alleges ineffective assistance of trial counsel as cause to excuse his procedural default.

Constitutionally ineffective assistance of counsel is "cause" for a procedural default, but "[a]ttorney error short of ineffective assistance of counsel [] does not constitute cause and will not excuse a procedural default." *McClesky*, 499 U.S. at 494 (citing *Murray*, 477 U.S. at 486-88). To prove that his attorney was constitutionally ineffective, Figueroa must show that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The Court finds that counsel was not deficient for not objecting to the challenged testimony. While it is true that testimonial hearsay is inadmissible against a defendant unless the declarant is unavailable and there was a prior opportunity for cross-examination

12

of the declarant, *Crawford v. Washington*, 541 U.S. 36, 58 (2004), it is also true that the challenged statements in this case do not constitute testimonial hearsay.

The Supreme Court has held that the Confrontation Clause applies only to out-of-court statements that are "testimonial" in nature. *See Whorton v. Bockting*, 549 U.S. 406, 419-20 (2007) (explaining that, under *Crawford*, the Confrontation Clause has no application to non-testimonial out-of-court statements); *Davis v. Washington*, 547 U.S. 813, 821 (2006) ("It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.").

The *Crawford* Court did not define "testimonial," but provided examples of those statements at the core of the definition, including prior testimony at a preliminary hearing, previous trial, or grand jury proceeding, as well as responses made during police interrogations. *Crawford*, 541 U.S. at 51-52. Additionally, the *Davis* Court has indicated that while statements made during a police interrogation, the purpose of which is "to establish or prove past events potentially relevant to later criminal prosecution," are testimonial in nature, statements "made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency" are "nontestimonial." *Davis*, 547 U.S. at 822.

In *Giles v. California*, 554 U.S. 353 (2008), the Court, albeit in dicta, observed that "[s]tatements to friends and neighbors about abuse and intimidation, and statements to physicians in the course of receiving treatment would be excluded, if at all, only by hearsay rules" because such are not testimonial within the meaning of the Confrontation Clause.

13

*Id.* at 376.  The Sixth Circuit, relying in part on this authority, subsequently held that statements of the type presently at issue did not implicate the Confrontation Clause.  *Doan v. Carter*, 548 F.3d 449, 458 (6th Cir. 2008).

The Court of Appeals correctly analyzed this issue under *Crawford* and *Davis*.  The statements at issue were made to a nurse during a medical examination and thus were not testimonial within the meaning of the Confrontation Clause;  "a child's statements to a non-governmental employee about possible abuse were not testimonial."  *Figueroa*, 2009 WL 637308, at *1 (citation omitted).  The questions asked by the nurse were clearly questions necessary to gather information in order to treat the patient, not to establish past events relevant to a criminal prosecution.  Further, there was an ongoing emergency.  A three-year-old child had just been penetrated by an adult male and blood had been found in her panties.  The police were assisting in that emergency.  Thus, under *Davis*, even if the nurse were acting as an agent of the police, the challenged statements were admissible.

Furthermore, given that the child's statements tended to support a lesser offense of CSC II, defense counsel could have reasonable concluded that it was in Figueroa's interest to not object.

With that in mind, the Court finds that defense counsel was not deficient for failing to object.  Figueroa has not established cause to excuse the procedural default.

The Court need not address the issue of prejudice when a habeas petitioner fails to establish cause to excuse a procedural default.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983); *Bell v. Smith*, 114 F.Supp.2d 633, 638 (E.D. Mich. 2000) (Gadola, J.).

In  addition, even if the claim was meritorious, the Court agrees with the Court of

14

Appeals that Figueroa would be unable to show that it had a substantial and injurious effect on the jury's verdict, given the brother's testimony and the condition of the victim's vagina and panties.  The evidence against Figueroa was overwhelming.

Figueroa also has not shown that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent.  *See Schlup v. Delo*, 513 U.S. 298, 326-27 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 624 (1998).  "To be credible, [a claim of actual innocence] requires [Figueroa] to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial."  *Schlup*, 513 U.S. at 324.  Figueroa has made no such showing.  See discussion *infra*.

Figueroa's claim is thus barred by procedural default and lacks merit.  Accordingly, he is not entitled to habeas relief.

## C.  Certificate of Appealability

The Court also will decline to issue a Certificate of Appealability (COA) to Figueroa. A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . .  jurists could conclude the issues presented are adequate to deserve encouragement to proceed

15

further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.  *Id.* at 336-37.  When a federal district court denies a habeas claim on procedural grounds without addressing the merits, a COA should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *See Slack*, 529 U.S. at 484-85.

The Court concludes that jurists of reason would not find its assessment of the procedural ruling debatable or wrong.  The Court thus declines to issue Petitioner Figueroa a COA.  Nor should he be granted leave to proceed on appeal *in forma pauperis*, as any appeal would be frivolous.  *See* Fed.R.App.P. 24(a).

### IV. CONCLUSION

For the reasons stated, this Court concludes that Petitioner FIgueroa  is not entitled to federal habeas relief on the claim presented in his petition.


Accordingly, **IT IS ORDERED** that the "Petition for Writ of Habeas Corpus" is **DENIED WITH PREJUDICE**.  (Dkt. # 1.)

**IT IS FURTHER ORDERED** that the Court declines to issue Figueroa a Certificate of Appealability and denies him an Application for Leave to Proceed on Appeal *In Forma Pauperis.*

16

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  April 13, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record
on April 13, 2011, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

17